THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARLON BROWN, Defendant-Appellant.

First District (3rd Division)   No. 1—07—1699

Opinion filed February 25, 2009.

Patricia Unsinn and David T. Harris, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Samuel Shim, and Michael Colonna, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant Marlon Brown was convicted of the unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2006)) and sentenced to 10 years in prison. On appeal, he contends that: (1) the State failed to prove him guilty of the offense beyond a reasonable doubt; (2) the trial court erred in delaying its ruling on his motion *in limine*; (3) the trial court erroneously made comments and rulings before the jury indicating bias towards the prosecution; (4) certain fines and fees were imposed in error; and (5) the trial court failed to afford defendant a $5 per day credit for his pre-sentence incarceration. For the following reasons, we affirm the judgment of the circuit court, but modify the fines, fees and costs order.

## BACKGROUND

Defendant's conviction stems from his delivery of .1 gram of heroin to an undercover police officer. The following facts were adduced at defendant's trial. Chicago police officer Keith Harris testified that on July 14, 2006, he was acting as an undercover narcotics "buy officer" in the area of 56th Street and Normal at 12:20 p.m. Officer Harris approached defendant on the street and asked defendant for some

"blows," a street term for heroin. When defendant asked him how many he wanted, Harris indicated that he wanted two pieces, which cost $20. Harris stated that he gave defendant two prerecorded $10 bills.

According to Harris, defendant then walked across the street from a vacant lot and handed codefendant Theron Blackmond the money. Harris was about 50 feet away from defendant during this exchange. Blackmond then went inside a van outside of Harris's view, while defendant stood alongside the van. At that point, Blackmond handed defendant an object. Defendant then walked back over to Harris and handed Harris a white piece of paper with a white powder substance inside it. Defendant told him it was raw heroin that had not been mixed with anything yet. According to Harris, defendant "broke some off" and gave Harris an amount equal to $20. Harris testified that he never lost sight of defendant during the transaction.

Harris placed the piece of paper in his pocket and left the scene. He radioed his team members that there had been a positive purchase of narcotics and gave them a physical description of defendant. After defendant was detained, Harris positively identified defendant as the man who sold him the narcotics. Harris then went to the police station, inventoried the evidence and sent it to the crime lab for analysis. Harris acknowledged that the prerecorded money he used in the transaction was never recovered and that no narcotics were found on defendant.

Chicago police officer Charles Person testified that on July 14, 2006, he was assigned to conduct narcotics surveillance from a vehicle located about two houses away from the transaction. Person saw Officer Harris having a conversation with defendant and saw them walk down the street to the middle of the block. Defendant then walked across the street up to the rear of a van where he met with Blackmond. Person saw defendant give Blackmond some money, saw Blackmond take the money and enter the van. A few seconds later, Blackmond handed an item to defendant. Defendant then walked back toward Harris with a clenched fist and Blackmond walked into a house located by the van. Person testified that defendant then had another conversation with Harris and handed Harris an item. Harris then walked away and defendant walked back across the street as Blackmond was coming out of the house.

After getting confirmation from Harris that there was a positive narcotics transaction, Person informed the enforcement officers as to defendant's location and description. After a few minutes, defendant was detained until Harris came back to identify him. Person acknowledged in cross-examination that his report indicated that Harris

purchased the narcotics for $30 instead of $20 and that he did not note the clenched fist in his report. Person was present when defendant was searched, and no narcotics or money was found on defendant and no money was found on Blackmond. No narcotics were recovered from the van.

Chicago police officer Trevor Stotts testified that on July 14, 2006, he was working as an enforcement officer with the narcotics unit. He was assigned to the area of 56th Street and Normal. At about 12:20 p.m., he received a description of the offenders and a location of 436 West 56th Street. He saw that defendant matched the description and detained him until Harris arrived and positively identified him as the one who sold him the suspect narcotics. Stotts indicated that defendant resided at 437 West 56th Street.

The parties stipulated that if Nancy McDonagh, a forensic chemist at the Illinois State Police crime lab, were called to testify, she would state that in her expert opinion, within a reasonable degree of scientific certainty, the content of the item tested was positive for the presence of heroin and that the actual weight of the item was .1 gram. They further stipulated that the van belonged to Wanda Blackmond of 434 West 56th Street.

Defendant did not testify. The jury found defendant guilty of the unlawful delivery of a controlled substance. Based on prior convictions, the trial court sentenced defendant as a Class X offender to a 10-year prison term. Defendant filed this timely appeal.

ANALYSIS

Defendant contends that the evidence presented at trial was insufficient to prove him guilty of the offense beyond a reasonable doubt. Specifically, defendant argues that Officer Harris's testimony was inherently unbelievable because the State failed to produce corroborating evidence of narcotics and the prerecorded funds. Additionally, defendant maintains that inconsistencies in Officer Person's testimony rendered his testimony unworthy of belief, requiring a reversal of his conviction.

When reviewing challenges to the sufficiency of the evidence in a criminal case, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime upon which the defendant was convicted beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court may not substitute its judgment for that of the trier of fact. *People v. Jones*, 219 Ill. 2d 1, 33 (2006). "The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsisten-

cies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact." *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

To sustain a conviction for the unlawful delivery of a controlled substance, the State must prove that defendant knowingly delivered a controlled substance. 720 ILCS 570/401(d) (West 2006). Delivery is defined as "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 ILCS 570/102(h) (West 2006); *People v. Trotter*, 293 Ill. App. 3d 617, 619 (1997).

■ In the present case, the evidence, when taken in the light most favorable to the prosecution, established that defendant knowingly delivered .1 gram of heroin. Defendant indicated to Officer Harris that he had heroin for purchase, walked across the street to a van, handed some money to Blackmond, retrieved an item, then gave Harris a white powdery substance which was ultimately found to be .1 gram of heroin, and Harris identified defendant shortly after the transaction as the person from whom he purchased the narcotics. "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *Smith*, 185 Ill. 2d at 541. Harris's testimony was corroborated by Officer Person, who saw defendant have a conversation with Harris, walk across the street to the van where he handed Blackmond some money, retrieve an item from Blackmond, and then hand an item to Harris. There was no dispute that the item tested was heroin.

Defendant takes issue with Harris's testimony, that defendant "broke some [heroin] off" and gave him an amount equal to $20, because no remaining heroin was recovered from defendant and he was immediately detained. Additionally, defendant maintains that Harris's testimony that he gave defendant $20 was unbelievable because the prerecorded $20 was never recovered. Any infirmities perceived in Harris's testimony went to its weight and to his credibility as a witness. *People v. Hall*, 194 Ill. 2d 305, 332 (2000). It was for the jury to judge whether there were unresolved questions and, if so, how those flaws affected the witnesses' credibility as a whole. *People v. Cunningham*, 212 Ill. 2d 274, 285 (2004). The jury may "accept or reject as much or as little of a witness's testimony as it pleases." *People v. Sullivan*, 366 Ill. App. 3d 770, 782 (2006).

There was a plausible explanation as to the missing funds, which could have been disposed of by Blackmond when he went inside the

house for a period of time. Additionally, contrary to defendant's assertion, no witness actually testified that defendant remained in view of the officers "the entire time" as defendant suggests. Rather, the testimony was that the enforcement team detained defendant within a few minutes of the transaction. Accordingly, it was for the jury to weigh the testimony, which was corroborated in many respects, and determine its effect on Officer Harris's credibility. We find that the trier of fact could have reasonably accepted the testimony as a whole as proof of the essential elements of the crime beyond a reasonable doubt.

With respect to alleged inconsistencies between Officer Person's testimony and that of Harris, defendant points to Person's failure to observe defendant break off a portion of the item, as Harris testified, his failure to identify the location of the transaction as being in the middle of a vacant lot, as Harris testified, and the impeachment regarding certain details omitted in his report. Initially, we reject defendant's argument because Officer Person was never asked whether or not he observed defendant break the item and was never asked specifically whether or not the transaction occurred specifically in a vacant lot. Indeed, Person testified consistently that it was in the middle of the block, and when asked whether there were people around in the area where the transaction occurred, Person testified, "[n]ot in that area. There are several vaca[nt] lots around there." Any other inconsistencies were minor in nature, fully explored at trial, and do not create a reasonable doubt of defendant's guilt. *People v. Cunningham*, 309 Ill. App. 3d 824, 827 (1999).

Defendant next contends that the trial court erroneously refused to rule on his motion *in limine* to exclude prior convictions from use as impeachment unless and until defendant testified, and denied him the ability to meaningfully exercise his constitutional right to testify. He also maintains that he should not be denied appellate review despite the fact that he did not testify at trial.

Prior to trial, defendant filed a motion *in limine* seeking to bar the State from introducing evidence of his prior convictions for purposes of impeachment. The trial judge commented on two of the convictions, finding that as a matter of law, they would not be admissible, but declined to rule on the other two convictions prior to defendant testifying, stating that it "is the Court's position and always has been" not to rule on such a motion "unless and until the defendant testifies." Defendant ultimately chose not to testify.

■ Our supreme court recently resolved this issue in *People v. Patrick*, 233 Ill. 2d 63 (2009). The court recognized that depriving a defendant of a ruling on the admissibility of the prior convictions

deprives him of needed information to make an informed and intelligent decision about whether to testify. *Patrick*, 233 Ill. 2d at 70-71. Thus, the court concluded that a trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion. In all but the most complicated cases, the trial judge will be able to determine before a defendant testifies whether any convictions would be excluded as a matter of law. *Patrick*, 233 Ill. 2d at 71.

Nevertheless, the court, relying on the reasoning expressed in *Luce v. United States*, 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984), *People v. Whitehead*, 116 Ill. 2d 425 (1987), and *People v. Thompkins*, 161 Ill. 2d 148 (1994), held that the issue of a trial court's refusal to rule is not preserved for review where the defendant chooses not to testify. *Patrick*, 233 Ill. 2d at 80. In making its ruling, the court rejected the arguments made by defendant in the present case. Accordingly, where defendant chose not to testify here, we are constrained to follow the supreme court and find that defendant failed to preserve his right to appellate review of this issue. *Patrick*, 233 Ill. 2d at 80.

■ We next address defendant's contention that he was denied the right to an impartial judge and jury because the trial judge repeatedly displayed his support for the State's case. He initially argues that the trial judge improperly commented on the credibility of a State witness.

A trial judge is not free to make comments or insinuations which indicate an opinion on the credibility of a witness. *People v. Falaster*, 173 Ill. 2d 220, 231-32 (1996). For comments to constitute reversible error, the defendant must demonstrate that they were a material factor in the conviction or that prejudice appears to have been the probable result. *People v. Brown*, 172 Ill. 2d 1, 38-39 (1996). Defendant argues that the trial judge bolstered the credibility of Officer Person when he commented that the officer "correctly answered" a question. The following testimony was elicited on cross-examination:

"Q. [Defense counsel:] Now, [defendant] on July 14, 2006 lived at 437 West 56th Street, right?

A. [Person:] I have no idea. I don't know.

Q. Well, that fact is included in your report, is that fair to say?

A. It would be, yeah.

Q. Judge, may I approach?

THE COURT: The objection is sustained. This is not substantive impeachment here. That information may have been garnered later, but at the time he was there, he correctly answered he may not have known where he lived."

Taken in context, this brief statement was not a comment on the cred-

ibility of the witness, nor a material factor in defendant's conviction. Rather, it was an explanation of the trial judge's evidentiary ruling that any attempt to impeach the testimony with the officer's report would be improper because it would not be inconsistent. Additionally, to the extent defendant argues that the trial judge's comment misstated the testimony, any alleged confusion was cured by the instruction directing the jury that they are not to construe any of the judge's rulings or remarks as an opinion on the facts. Illinois Pattern Jury Instructions, Criminal, No. 1.01 (4th ed. 2000).

We next address defendant's argument that the trial judge made *sua sponte* rulings which improperly diverted the defense from proper lines of questioning and suggested impatience with defense counsel's questions. Specifically, defendant argues that he was prevented from "fully exploring the theory that the witnesses were not testifying truthfully." The record reflects that defendant had ample opportunity to cross-examine both Officers Harris and Person, conveying to the jury effectively defendant's theory of the case that the officers did not recover drugs or money and that defendant was in front of his home when he was arrested. Indeed, those facts were undisputed. Accordingly, we find no prejudice to defendant and no merit to defendant's argument.

Defendant additionally points to a number of instances allegedly reflecting the trial judge's hostile or biased attitude toward defense counsel. It is well settled that the trial judge has a duty to refrain from conveying an improper impression to the jury. *People v. Patterson*, 192 Ill. 2d 93, 138 (2000). To constitute reversible error, defendant must demonstrate that the comments constituted a material factor in the conviction or were such that an effect on the jury verdict was the probable result. *Patterson*, 192 Ill. 2d at 138; *People v. Harris*, 123 Ill. 2d 113, 137 (1988). Defendant argues that the trial judge's characterization of a question as "improper" and statement that counsel could "call that witness if you wish to do that" shifted the burden of proof and denied him a fair trial.

We disagree. Rather, a review of the cross-examination reveals that the trial judge was making a legal ruling on an objection from the prosecutor and merely explained to counsel that if she wanted to elicit certain testimony, it had to be through another witness. Considering the exchange in context of the entire trial record and considering that the jury was instructed that the trial court's rulings and remarks were not meant to indicate an opinion on the facts or the verdict, we find neither comment prejudiced defendant or demeaned defense counsel. *Harris*, 123 Ill. 2d at 139.

We next address defendant's contention that certain fines and

fees were improperly imposed and that he is entitled to credit against his fines for presentence incarceration. The court imposed a $5 court system fee on defendant pursuant to section 5—1101(a) of the Counties Code. 55 ILCS 5/5—1101(a) (West 2006). Section 5—1101(a) provides in pertinent part as follows:

"A $5 fee to be paid by the defendant on a judgment of guilty or a grant of supervision for violation of the Illinois Vehicle Code [625 ILCS 5/1—100 *et seq.*] other than Section 11—501 [625 ILCS 5/11—501] or violations of similar provisions contained in county or municipal ordinances committed in the county ***." 55 ILCS 5/5—1101(a) (West 2006).

Applying the terms of section 5—1101(a), as the State concedes, we must vacate the $5 court system fee because defendant was found guilty of unlawful delivery of a controlled substance, which is not a violation of the Illinois Vehicle Code or of similar provisions contained in county or municipal ordinances. *People v. Paige*, 378 Ill. App. 3d 95, 104-05 (2007).

■ Defendant additionally argues that the court erred in assessing a $20 preliminary hearing fee pursuant to section 4—2002.1(a) of the Counties Code (55 ILCS 5/4—2002.1(a) (West 2006)) because defendant never had a "preliminary examination" within the meaning of that section. Rather, he was indicted by the grand jury.

Section 4—2202.1(a) provides, in pertinent part:

"State's attorneys shall be entitled to the following fees:

\* \* \*

For preliminary examinations for each defendant held to bail or recognizance, $20." 55 ILCS 5/4—2002.1(a) (West 2006).

The term "preliminary examination" is not defined in the Counties Code. However, another division of this court recently interpreted this section of the Code in *People v. Ellison*, 383 Ill. App. 3d 146, 147 (2008), holding that "as used in section 4—2002.1(a), a 'preliminary examination' means the proceedings at which a trial court examines relevant factors for the purpose of determining whether or not to hold defendant on bail or recognizance." Therein, the court declined to apply the Code of Criminal Procedure of 1963 to define "preliminary examination," finding that the definition would ignore the "bail or recognizance" language in the relevant statute. *Ellison*, 383 Ill. App. 3d at 147. The court found that if the term was intended to be defined as in the Code of Criminal Procedure, the statute could have referred to the definition in the Code, in light of the statute's reference to another code to define a different term within the statute. *Ellison*, 383 Ill. App. 3d at 147.

Defendant urges this court to reject the holding in *Ellison*,

maintaining that the term "preliminary examination" is a term of art and is the equivalent of a "preliminary hearing," which generally examines the sufficiency of the evidence to prosecute the accused.

We begin our analysis with the rules of statutory construction. The language of the statute is the best indication of legislative intent, and we give that language its plain and ordinary meaning. *People v. Pack*, 224 Ill. 2d 144, 147 (2007). In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). Our review is *de novo*. *Perry*, 224 Ill. 2d at 324.

Where a term is not defined, "we must assume that the legislature intended the term to have its ordinary and popularly understood meaning." *People v. Maggette*, 195 Ill. 2d 336, 349 (2001). Black's Law Dictionary recognizes that "preliminary examination" is synonomous with a "preliminary hearing" and defines it as "[a] criminal hearing *** to determine whether there is sufficient evidence to prosecute an accused person." Black's Law Dictionary 1199 (7th ed. 1999). Additionally, in determining the plain meaning, we consider the subject addressed by section 4—2002.1(a). This section relates to the fees garnered by State's Attorneys for various criminal procedures that may occur throughout the criminal process. 55 ILCS 5/4—2002.1(a) (West 2006). Consequently, contrary to the holding in *Ellison*, any explanation of the fees due for "preliminary examinations" necessarily requires us to examine the Code of Criminal Procedure of 1963, which is the relevant statute from which those proceedings are specifically derived. 725 ILCS 5/100—1 *et seq.* (West 2006).

Article 109 of the Code of Criminal Procedure is entitled "Preliminary Examination" and encompasses the scheme to be followed in initiating criminal proceedings. Specifically, section 109—1 provides that an arrested person is to be taken before a judge where, among other directives, the judge shall "[s]chedule a preliminary hearing in appropriate cases" (725 ILCS 5/109—1(b)(3) (West 2006)) and "[a]dmit the defendant to bail in accordance with the provisions of Article 110 of this Code" (725 ILCS 5/109—1(b)(4) (West 2006)). At that time, under section 110—5, the trial judge determines the amount of bail or the conditions of release. 725 ILCS 5/110—5 (West 2006).

The *Ellison* court appears to equate a "preliminary examination" with this type of hearing, where "a trial court examines relevant factors for the purpose of determining whether or not to hold defendant on bail or recognizance." *Ellison*, 383 Ill. App. 3d at 147. However, we reject the interpretation in *Ellison* based on the plain language of the Code. Section 109—3 expressly defines a "preliminary examination"

as a procedure during which "[t]he judge shall hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant." 725 ILCS 5/109—3 (West 2006). Section 109—3.1 further articulates that those persons charged with a felony may be prosecuted by "either a preliminary examination as provided in Section 109—3 or an indictment by Grand Jury as provided in Section 111—2" and sets forth the timetables for those procedures depending upon whether a defendant is in custody or "on bail or recognizance." 725 ILCS 5/109—3.1 (West 2006). Thus, contrary to the holding in *Ellison*, we find that based upon the plain language of the Code of Criminal Procedure, a determination regarding "whether or not to hold a defendant on bail or recognizance" is distinct from a "preliminary examination," which is specifically defined by section 109—3. 725 ILCS 5/109—3 (West 2006).

As applied to the present case, where defendant was prosecuted by indictment rather than by "preliminary examination," we agree that he was not subject to the $20 fine pursuant to section 4—2002.1(a) of the Counties Code. 55 ILCS 5/4—2002.1(a) (West 2006). Accordingly, we must vacate the $20 preliminary hearing fee.

■ Next, we consider defendant's argument that the trial court improperly assessed a $20 charge pursuant to section 10(c)(2) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(c)(2) (West 2006)) because this fine only applies when no other fine is imposed. Defendant was assessed multiple other fines, including a $1,000 controlled substance assessment fine, a $100 trauma fund fine, a $10 mental health court fine, and a $10 trauma fund spinal cord fine. Accordingly, we agree that the court improperly imposed the $20 fine pursuant to section 10(c)(2) of the Act.

However, as recognized by defendant, section 10(b) of the Act is the operative provision here where other fines were imposed. *People v. Jamison*, 229 Ill. 2d 184, 193 (2008). Section 10(b) provides for "an additional penalty of $4 for each $40, or fraction thereof, of fine imposed." 725 ILCS 240/10(b) (West 2006). Therefore, based upon the fines totaling $1,115, defendant is to be assessed a $112 fine under section 10(b) of the Act.

■ Lastly, we address defendant's contention that the trial court erred in not considering the $5-per-day credit for each of his 328 days of presentence incarceration that was to be applied toward certain fines imposed upon him. The parties agree that defendant had $1,640 of available credit. The parties also agree that the $5-per-day credit under section 110—14 of the Code of Criminal Procedure of 1963 operates to offset certain fines, but that the credit cannot exceed the amount of the fine. 725 ILCS 5/110—14 (West 2006).

The fines for which defendant may apply his presentence credit include (1) the $1,000 controlled substance assessment; (2) the $100 trauma fund fine; and (3) the $10 mental health court fine. Defendant concedes that he is not allowed an offset for the $5 trauma fund spinal cord fine or the $112 Violent Crime Victims Assistance Fund fine because these charges are not subject to offset pursuant to statute. See 730 ILCS 5/5—9—1.1(b) (West 2006); 725 ILCS 240/10(b) (West 2006) (these charges "shall not be considered a part of the fine for purposes of any reduction made in the fine for time served either before or after sentencing"). Therefore, defendant is entitled to credit toward $1,110 of the fines imposed.

Accordingly, for all of the foregoing reasons, we: (1) affirm defendant's conviction and sentence; (2) vacate the $5 court system charge, the $20 preliminary hearing fee, and the $20 Violent Crime Victims Assistance Fine; and (3) direct the clerk of the circuit court to amend the fines, fees, and costs order to reflect the imposition of a $112 fine pursuant to section 10(b)(2) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(b) (West 2006)), and to reflect a $5-per-day credit totaling $1,110 to be applied toward the controlled substance assessment, the trauma fund fine, and the mental health court fine.

Affirmed; fines, fees and costs order modified.

QUINN and COLEMAN, JJ., concur.