SIXTH DIVISION
DECEMBER 24, 2009

No. 1-08-1311

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from the
   )      Circuit Court of
   Plaintiff-Appellee,       )   Cook County
   )
v.       )   No. 07 CR 22014 (01)
   )
RONALD JONES,       )   Honorable
   )   Sharon Sullivan,
   Defendant-Appellant.       )   Judge Presiding.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Ronald Jones was convicted of a Class 3 felony theft of more than $300 and less than $10,000 of property (720 ILCS 5/16-1(a)(1) (West 2008)), following a bench trial. After hearing factors in aggravation and mitigation, the trial court sentenced defendant to five years of incarceration in the Illinois Department of Corrections. Defendant raises five issues on appeal, and requests that this court: (1) correct the mittimus to appropriately reflect the time defendant spent in custody prior to sentencing; (2) vacate the $20 preliminary examination fee (55 ILCS 5/4-2002.1(a) (West 2008)); (3) reduce the amount of the fine imposed pursuant to the Violent Crime Victims Assistance Act (725 ILCS 240/10 (West 2008)) from $20 to $4; (4) vacate the $10 arrestee's medical costs assessment (730 ILCS 125/17 (West 2006)); and (5) grant $5 of credit against defendant's fines for each day spent in custody prior to sentencing (725 ILCS 5/110-14 (West 2008)).

We affirm the decision of the circuit court of Cook County with the following modifications to the mittimus and to the fines, fees, and costs order: (1) the clerk should amend the mittimus to reflect 212 days of presentencing credit for time served; (2) we affirm the assessment of the preliminary examination fee (55 ILCS 5/4-2002.1(a) (West 2008)); (3) the clerk should amend the fines, fees, and costs order to

reflect a $4 Violent Crime Victims Assistance Fund fee (725 ILCS 240/10(b) (West 2008)); (4) we affirm the assessment of the $10 Arrestee's Medical Costs Fund fine (730 ILCS 125/17 (West 2006)); and (5) defendant's $30 Children's Advocacy Center fine should be offset by defendant's presentence credit for time served. This order reduces defendant's total amount owed to $539 (725 ILCS 5/110-14(a) (West 2008)).

BACKGROUND

Defendant does not raise any challenge to the validity of his conviction or sentence on appeal. Therefore, we state briefly the facts underlying his conviction.

At trial, Chicago police officer Gregory Unizycki testified that on the morning of October 8, 2007, a woman flagged his squad car near a garbage sorting facility in Chicago's Garfield Park neighborhood. At the woman's direction, Officer Unizycki drove through an open gate in the fence surrounding the property, and approached a van parked near a vacant building. Numerous "no trespassing" signs were posted along the outside of the fence. Officer Unizycki testified that he observed Christopher Brown, Andre Hopkins, and defendant holding metal piping and loading it into the van. At this time, the van contained some 40 to 50 pieces of metal pipes similar to those Officer Unizycki observed being held by defendant. When Officer Unizycki asked the men what they were doing, defendant responded that he knew that they should not be at the sorting facility, but that they were just trying to make some money.

Brian Sleman, the manager of the sorting facility, testified that he was approached by Chicago police officers on the morning of October 8, 2007, and asked to identify the metal pipes in the back of the van. Mr. Sleman identified the pipes as the same kind that were used in the vacant building near which the van was parked. Mr. Sleman also testified that he did not recognize the van, and that defendant did

2

not have permission to be on the premises or to park the van on the property. In addition, Mr. Sleman testified that the pipes were damaged as a result of having been pulled from the vacant building. The damage was so great that the pipes were unusable and could only be sold as scrap. The parties stipulated that a receipt would show that Mr. Sleman later received $536.80 in payment from third parties for the pipes recovered from the van.

Defendant testified on his own behalf and denied that he removed the metal pipes from the vacant building in the sorting facility. Instead, defendant testified that a neighborhood woman had paid defendant and two friends to remove scrap metal from her property, which defendant was dumping at the sorting facility when Officer Unizycki arrived. Defendant also testified that he did not observe any "no trespassing" signs around the perimeter of the sorting facility.

The trial court found defendant's testimony not credible and found him guilty of Class 3 felony theft of more than $300 and less than $10,000 of property (720 ILCS 5/16-1(a)(1) (West 2008)). Defendant's May 7, 2008, sentencing order reflects that he is entitled to presentencing credit of 183 days to apply to his 5-year sentence. Defendant's sentence also included various fines, fees, and costs, which totaled $585. The fines, fees, and costs order included a $20 preliminary hearing fee (55 ILCS 5/4-2002.1(a) (West 2008)); a $20 Violent Crime Victims Assistance Fund fee (725 ILCS 240/10(c)(1) (West 2008)); a $10 Arrestee's Medical Costs Fund fee (730 ILCS 125/17 (West 2006)); and a $30 Children's Advocacy Center fine (55 ILCS 5/5-1101(f-5) (West 2008)). This appeal followed.

ANALYSIS

On appeal, defendant does not contest the trial court's determination of guilt and argues only that we should correct the mittimus to reflect accurately his presentencing time served, and vacate and offset

3

1-08-1311

certain fines and fees imposed by the trial court. All of the issues raised on appeal involve questions of statutory interpretation, which this court reviews de novo. People v. Caballero, 228 Ill. 2d 79, 82 (2008).

1. Presentence Credit for Time Served

Defendant asks that we correct the mittimus to reflect accurately the amount of time served before sentencing, arguing that the trial court erroneously entered 183 days of credit for time served, when defendant was entitled to credit for 213 days. In its appellate brief, the State concedes the error but argues that defendant is entitled to credit for only 212 days because the date of sentencing should not be included in the credit. Thus, the parties' dispute concerns only one day of credit.

The record indicates, and both parties agree, that defendant was arrested on October 8, 2007, and sentenced on May 7, 2008, when the mittimus was issued. Therefore, defendant is entitled to 212 days' presentencing credit if the day of sentencing is not included or 213 days' credit if it is. 730 ILCS 5/5-8-7 (West 2006). At issue in this case is whether defendant may receive both presentencing and postsentencing credit for the same day, because on the day of sentencing defendant was incarcerated both presentencing and postsentencing. The wording of the statute does not explicitly state whether or not a defendant may receive both presentencing and postsentencing credit for the sentencing day.

Section 5-8-7 of the Unified Code of Corrections states in relevant part:

"(a) A sentence of imprisonment shall commence on the date on which the offender is received by the Department [of Corrections] or the institution at which the sentence is to be served.

(b) The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the

4

sentence was imposed." 730 ILCS 5/5-8-7 (West 2006).

In an exhaustive opinion, the first division of this district has recently explored this issue in great detail. People v. Williams, No. 1-08-2525 (September 28, 2009). The Fourth District has repeatedly held that a defendant is not entitled to presentencing credit for the day of sentencing. See Williams, slip op. at 2 (citing Fourth District cases denying defendants presentencing credit for the day of sentencing). However, other districts, including the First District, have held that a defendant may receive presentencing credit for the day of sentencing. See Williams, slip op. at 3 (citing cases granting defendant presence credit for the day of sentencing). After reviewing numerous appellate court cases discussing whether a defendant could receive presentencing credit for the day of sentencing, the Williams court identified two competing rationales underlying the divergent strands of cases:

> "The cases that include the day of sentencing in the presentencing credit apparently follow the undisputed rule that a portion of a day spent in custody adds a day of credit by implicitly acknowledging that a defendant in custody spends a portion of the sentencing day in custody prior to sentencing. The cases excluding the day of sentencing from the credit seek to prevent a defendant from receiving double credit: one day under section 5-8-7 for the portion of the sentencing day spent in presentencing detention and one day under section 3-6-3 for the portion of the same day spent after issuance of the mittimus commences the prison sentence in the Department's legal (if not physical) custody." Williams, slip op. at 4.

The Williams court found the concern over double crediting a defendant more persuasive and held that the defendant in that case was not entitled to presentencing credit for the day of sentencing. Williams, slip op. at 4.

5

We follow the precedent set by this district in Williams, and find that defendant was not entitled to presentencing credit for the date of sentencing. In addition, the fact that the United Code of Corrections demarcates two separate periods for calculating defendant's sentencing credit suggests that a defendant should not receive credit twice for a single day. In the statute quoted above, subsection (a) delineates the postsentencing credit, while subsection (b) delineates the presentencing credit. 730 ILCS 5/5-8-7 (West 2006). The fact that the two separate subsections set out two different time periods suggests a legislative intent that a defendant should not receive credit twice for the same day.

Therefore, we order the mittimus corrected to reflect 212 days of presentencing credit for time served.

## 2. Preliminary Examination Fee

Defendant also asks that we vacate the $20 preliminary examination fee imposed by the trial court. Section 4-2002.1(a) of the Counties Code reads, in relevant part: "State's attorneys shall be entitled to the following fees: *** For preliminary examinations for each defendant held to bail or recognizance, $20." 55 ILCS 5/4-2002.1(a) (West 2008). Although defendant concedes, and the record reflects, that a bail hearing was held, defendant argues that the bail hearing was not a "preliminary examination" within the meaning of section 4-2002.1(a) of the Counties Code. (55 ILCS 5/4-2002.1(a) (West 2008)); and therefore

defendant should not be charged the $20 preliminary examination fee.[1] The term "preliminary examination" is "not defined in the Counties Code." People v. Ellison, 383 Ill. App. 3d 146, 147 (2008).

Two different divisions of the First District Appellate Court have recently considered what constitutes a "preliminary examination" under this provisions of the Counties Code (55 ILCS 5/4-2002.1(a) (West 2008)), and have reached opposite conclusions.

In People v. Ellison, the fourth division of this district held that, "as used in section 4-2002.1(a), a 'preliminary examination' means the proceedings at which a trial [court] examines relevant factors for the purpose of determining whether or not to hold defendant on bail or recognizance." Ellison, 383 Ill. App. 3d at 147, citing 55 ILCS 5/4-2002.1(a) (West 2008). The Ellison court declined to read "preliminary examination" as a synonym for a probable cause hearing under the Code of Criminal Procedure (725 ILCS 5/100-1 et seq. (West 2008)), because, first, to do so would essentially read the words "held to bail or recognizance" out of the statute. Ellison, 383 Ill. App. 3d at 147-48. "The well established principles of statutory construction mandate that all language used in a statute be given effect and that no word, clause, or sentence be rendered meaningless." Ellison, 383 Ill. App. 3d at 147. Second, the court observed that had the legislature intended to equate "preliminary examination" in the Counties Code with a probable cause hearing in the Code of Criminal Procedure, it would have done so, "particularly in light of the

---

[1]Although the statute uses the term "preliminary examination" (55 ILCS 5/4-2002.1(a) (West 2008)), the fines, fees, and costs order completed by the trial court states "Preliminary Hearing - State's Attorney - 55 ILCS 5/4-2002.1(a)." When referring to the fee itself, we will use the term "preliminary examination" in order to be consistent with the statute.

[Counties Code's] reference to another code to define a different term." Ellison, 383 Ill. App. 3d at 148.

When the third division of this district addressed the same issue in People v. Brown, 388 Ill. App. 3d 104 (2009), that court declined to follow Ellison and instead chose to read the Counties Code's "preliminary examination" term (55 ILCS 5/4-2002.1(a) (West 2008)) in light of the Code of Criminal Procedure's description of a preliminary hearing. 725 ILCS 5/109-1(b) (West 2008). The Brown court first looked to Black's Law Dictionary, which defined a "preliminary examination" as a term of art synonymous with a "preliminary hearing," which, in turn, was defined as a hearing "to determine whether there is sufficient evidence to prosecute an accused person." Brown, 388 Ill. App. 3d at 113, citing Black's Law Dictionary 1199 (7th ed. 1999). However, a preliminary examination and a preliminary hearing cannot be synonymous under Illinois law, because the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/109-3(e) (West 2008)), explicitly refers to a "preliminary hearing or examination." (Emphasis added.) 725 ILCS 5/109-3(e) (West 2008). Since we must construe a statute such that "no word, clause or sentence be rendered meaningless, superfluous or insignificant," we cannot read "hearing" and "examination" as synonymous. Ellison, 383 Ill. App. 3d at 147.

Instead, we must construe these terms as referring to separate events. Section 109-1 of the Code of Criminal Procedure, which details the actions a judge must take following a defendant's arrest, supports this analysis. Section 109-1(b) states, in relevant part: "The judge shall: *** (3) Schedule a preliminary hearing in appropriate cases; and (4) Admit the defendant to bail in accordance with the provisions of Article 110 of this Code." 725 ILCS 5/109-1 (West 2008). Subsection (3) of Section 109-1(b) instructs the judge to "schedule a preliminary hearing in appropriate cases," indicating that the preliminary hearing shall occur at a future date. 725 ILCS 5/109-1 (West 2008). Yet, subsection (4)

8

instructs the judge to "admit the defendant to bail" in the present tense, indicating that the bail hearing occurs immediately, and at a different time from the preliminary hearing. 725 ILCS 5/109-1 (West 2008). Therefore, a preliminary hearing and a bail hearing cannot be the same event. Because section 4-2002.1(a) of the Counties Code states "preliminary examination for each defendant held to bail or recognizance" and because section 109-1 Code of Criminal Procedure indicates that a bail examination is separate from a preliminary hearing, a preliminary examination under section 4-2002.1(a) of the Counties Code cannot be synonymous with a preliminary hearing under the Code of Criminal Procedure. 55 ILCS 5/4-2002.1(a); 725 ILCS 5/109-1 (West 2008).

The Brown court then stated that section 109-3 of the Code of Criminal Procedure expressly defines a "preliminary examination" as a probable cause hearing. Brown, 388 Ill. App. 3d at 113-14, citing 725 ILCS 5/109-3(a) (West 2008). However, the statute does not state that this subsection defines the term, as the Brown court claims.

The Brown court held, based on the language of sections 109-3 and 109-3.1 of the Code of Criminal Procedure, that "a determination regarding 'whether or not to hold a defendant on bail or recognizance' [Ellison's definition of "preliminary examination" under the Counties Code] is distinct from a "preliminary examination" as defined in the Code of Criminal Procedure. Brown, 388 Ill. App. 3d at 114. Because it held that a preliminary examination was equivalent to a probable cause hearing, the court determined that the defendant, who had received an indictment instead of a probable cause hearing would not be liable for the $20 preliminary hearing fee. Brown, 388 Ill. App. 3d at 114. Brown stated that "contrary to the holding in Ellison, any explanation for the fees due for 'preliminary examinations' necessarily requires us to examine the Code of Criminal Procedure of 1963, which is the relevant statute from which those

9

proceedings are specifically derived." 388 Ill. App. 3d at 113. We see nothing in the Counties Code that necessarily requires us to examine the Code of Criminal Procedure for a definition of "preliminary examination." Even when we look to the Code of Criminal Procedure, section 109-3 indicates that a preliminary examination is not synonymous with a preliminary hearing, the exact opposite of the conclusion reached in Brown. See 725 ILCS 5/109-3 (West 2008).

Accordingly, we decline to adopt the reasoning of Brown, and instead follow the reasoning of Ellison in defining a preliminary examination under the Counties Code as "the proceedings at which a trial [sic] examines relevant factors for the purpose of determining whether or not to hold defendant on bail or recognizance." Ellison, 383 Ill. App. 3d at 147. In interpreting a statute, a reviewing court must "ascertain and give effect to the legislature's intent" and "the best indication of legislative intent is the statutory language, given its plain and ordinary meaning." People v. Pack, 224 Ill. 2d 144, 147 (2007). In the case at bar, we must consider the plain and ordinary meaning of the statute at issue: section 4-2002.1(a) of the Counties Code (55 ILCS 5/4-2002.1(a) (West 2008)). If we were to follow the Brown court and hold that a preliminary examination was synonymous with a probable cause hearing, we would be reading the words "held to bail or recognizance" out of the statute, because a probable cause hearing does not involve a determination of whether a defendant should be "held to bail or recognizance." 55 ILCS 5/4-2002.1(a) (West 2008). Accordingly, we find that the trial court rightly imposed the $20 preliminary hearing fee pursuant to section 4-2002.1(a) of the Counties Code (55 ILCS 5/4-2002.1(a) (West 2008)).

### 3. Violent Crimes Assistance Act Fine

Defendant next argues that the trial court improperly assessed the Violent Crime Victims Assistance Fund fine when it imposed a $20 fine pursuant to section 10(c)(2) of the Violent Crime Victims

Assistance Act. 725 ILCS 240/10(c) (West 2008). We agree. The statute dictates, in pertinent part:

"(b) *** [T]here shall be an additional penalty collected from each defendant upon conviction

of any felony or upon conviction of or disposition of supervision for any misdemeanor *** an

additional penalty of $4 for each $40 or fraction thereof, of fine imposed. ***

(c) When any person is convicted in Illinois on or after August 28, 1986, of an offense listed

below, or placed on supervision for such an offense on or after September 18, 1986, and no

other fine is imposed, the following penalty shall be collected by the Circuit Court Clerk:

*** (2) $20, for any other felony or misdemeanor, excluding any conservation offense. Such

charge shall not be subject to the provisions of section 110-14 of the Code of Criminal

Procedure of 1963 [725 ILCS 5/110-14]." (Emphasis added.) 725 ILCS 240/10 (West 2008).

Therefore, if the trial court assessed another "fine" against defendant in addition to the Violent

Crime Victims Assistance Fund fine, subsection (b) of the statute should apply, not subsection (c). As

discussed in sections one and four of this opinion, the preliminary examination fee and the Arrestee's

Medical Costs Fund fee were fees, not "fines."

However, the trial court also assessed defendant a $30 Children's Advocacy Center charge (55

ILCS 5/5-1101(f-5) (West 2008)). Although the statute terms this charge a "fee" (55 ILCS 5/5-1101(f-5)

(West 2008)), we find that the charge is a fine under the reasoning of our supreme court's recent decision

in People v. Graves, No. 106541 (September 24, 2009). As the supreme court explained in Graves, a fee

that " 'seeks to recoup expenses incurred by the state,' " while a fine is " 'punitive in nature' " and is also "

'a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense.' "

Graves, slip op. at 5, citing People v. Jones, 223 Ill. 2d 569, 581, 582 (2006). Even if the statute terms a

charge a fee rather than a fine, that label is not determinative. Jones, 223 Ill. 2d at 599. In the case at bar, the statute, entitled "Additional fees to finance court system," states, in relevant part: "In each county in which a Children's Advocacy Center provides services, the county board may adopt a mandatory fee of between $5 and $30 to be paid by the defendant on a judgment of guilty." 55 ILCS 5/5-1101(f-5) (West 2008). Although the statute terms the charge a fee, rather than a fine, the fact that the charge is mandatory for convicted defendants, and does not reimburse the state for expenses incurred while prosecuting the defendant indicates that the Children's Advocacy Center charge is a fine rather than a fee. Jones, 223 Ill. 2d at 600 (a charge is a fine, despite its label, if it "does not seek to compensate the state for any costs incurred as the result of prosecuting the defendant").

In addition, the appellate court recently held in People v. Price, 375 Ill. App. 3d 684 (2007), that at fee is more appropriately characterized as a fine where there was "no relevant connection" between the offense committed by the defendant and the public endeavor funded by the fee. Price, 375 Ill App. 3d at 700. In the instant case, there was no relevant connection between defendant's theft of scrap metal pipes and children's advocacy or juvenile justice. This lack of relevant connection between the defendant's offense and the fee charged also indicates that the Children's Advocacy Center charge is a fine rather than a fee.

Because the trial court assessed a fine against defendant in addition to the Violent Crime Victims Assistance Fund fine, subsection (b) of the statute applies. 725 ILCS 240/10 (West 2008). Therefore, defendant should be charged a fine of only $4. 725 ILCS 240/10(b) (West 2008). Accordingly, we vacate the $20 fine and order the clerk to amend the assessment of defendant's fees and costs to include a $4 fee pursuant to section 10(b) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(b) (West

1-08-1311

2008)).

4. Arrestee's Medical Costs Fund Assessment

Defendant further argues that we should vacate the $10 Arrestee's Medical Costs Fund assessment pursuant to section 17 the County Jail Act (730 ILCS 125/17 (West 2006)), because the record provides no evidence indicating that defendant suffered any injury during his arrest or that Cook County incurred any medical expenses relating to defendant. The State agrees that we should vacate this charge. We disagree.

The statute reads, in pertinent part:

"An arresting authority shall be responsible for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff. However, the arresting authority shall not be so responsible if the arrest was made pursuant to a request by the sheriff. When medical or hospital services are required by any person held in custody, the county or arresting authority shall be entitled to obtain reimbursement from the Arrestee's Medical Costs Fund to the extent moneys are available from the Fund. To the extent that the person is reasonably able to pay for that care, including reimbursement from any insurance program or from other medical benefit programs available to the person, he or she shall reimburse the county.

The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty offense or business offense. The fee shall be taxed as costs to be collected from the defendant, if possible upon conviction or entry of an order of supervision. The fee shall not be considered a part of the fine for purposes of any reduction in

13

the fine.

> All such fees collected shall be deposited by the county in a fund to be established and known as the Arrestee's Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff and administration of the Fund." (Emphasis added.) 730 ILCS 125/17 (West 2006).

Both parties argue in their briefs that the plain language of the statute indicates that where the county does not incur costs for medical expenses while a defendant is under arrest, the defendant should not be subject to the $10 fee. We disagree.

First, the statute does not place any conditions on the county's right to the fee. The statute clearly states: "The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty offense or business offense." 730 ILCS 125/17 (West 2006). The statute does not state that the county shall only be entitled to a $10 fee so long as the county incurs costs for medical expenses for the care of the defendant. By excluding defendants convicted of "a petty offense or business offense" (730 ILCS 125/17 (West 2006)), the legislature demonstrated that it was capable of drawing exceptions to the broad statement that the county is entitled to a fee from each conviction, and the legislature did not chose to exclude the convictions of defendants who did not incur medical expenses from the reach of the statute.

Furthermore, the last sentence quoted above indicates that the moneys in the fund may be used for something other than medical expenses incurred by the arrestee. The statute states: "Moneys in the fund shall be used solely for reimbursement of costs for medical expenses to the arrestee while he or she is

14

in the custody of the sheriff and administration of the fund." (Emphasis added.) 730 ILCS 125/17 (West 2006). Therefore, the county may use the $10 fee charged to defendant for reimbursement of either costs for medical expenses incurred by the defendant while under arrest or costs for administration of the fund. In essence, the fund functioned as a heath insurance policy for the defendant while incarcerated, and thus he received a benefit even though he required no medical services. Although defendant in the instant case incurred no medical expenses while under arrest, the county may still use the $10 fee to pay for the administration of the Arrestee's Medical Costs Fund.

A split in the appellate districts has recently emerged on the question of whether a convicted defendant should be assessed the $10 fee if he did not incur any medical expenses while under arrest. In People v. Cleveland, No. 1-07-3116 (August 3, 2009), the first division of this district determined that under the plain language of the statute, the defendant could not be charged the Arrestee's Medical Costs Fund assessment because he did not undergo treatment for any injury suffered during his arrest. Cleveland, slip op. at 19-20. For the reasons stated above, we decline to follow the Cleveland court's analysis.

In contrast, the Second District in People v. Evangelista, Nos. 2-07-1022 & 2-07-1023 cons. (July 30, 2009), construed section 17 of the County Jail Act (730 ILCS 125/17 (West 2006)), as creating an insurance fund that would cover the medical expenses incurred by all arrestees, not just the expenses of a particular defendant. Evangelista, slip op. at 7. The Evangelista court read the word "arrestee" to mean all arrestees, and not just one defendant. Evangelista, slip op. at 7, citing 5 ILCS 70/1.03 (West 2006) ("Words importing the singular number may extend and be applied to several persons or things."). This reasoning unnecessarily stretches the language of section 17. The statute refers to medical expenses

15

relating to "the arrestee," which indicates a particular individual rather than a class of arrestees. 730 ILCS 125/17 (West 2006). The Evangelista court's interpretation of section 17 is unnecessary in light of the statutory language allowing the county to use defendant's assessment to recover costs for administration of the fund. 730 ILCS 125/17 (West 2006). For the reasons stated above, while we decline to follow the Second District's stated reasoning, we agree both: (1) that the Arrestee's Medical Costs Fund assessment should apply to defendants who do not incur medical costs while under arrest; and (2) that the fund functions, in essence, as an insurance fund.

Accordingly, we affirm the $10 Arrestee's Medical Costs Fund assessment.

### 5. $5-Per-Day Credit

Defendant also argues that he is entitled to a $5-per-day credit against his fines for time served prior to sentencing. 725 ILCS 5/110-14(a) (West 2008). We agree. Section 110-14(a) states in full:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2008).

Section 110-4 defines what is and what is not a bailable offense. 725 ILCS 5/110-4 (West 2008). The statute states that "[a]ll persons shall be bailable before conviction," unless an exception listed in the statute applies. 725 ILCS 5/110-4(a) (West 2008). Because none of the exceptions listed in section 110-4 prevent a person charged with theft, as was defendant, from receiving bail, defendant therefore is eligible for the $5-per-day credit. 725 ILCS 5/110-4 (West 2008). Because defendant has accumulated 212 days worth of presentencing credit, defendant may apply up to $1,060 of credit against his fines. This credit applies only

16

against a "fine," not a fee. 725 ILCS 5/110-14(a) (West 2008).

Defendant has only one fine against which he can apply his credit: the $30 Children's Advocacy Center charge. 55 ILCS 5/5-1101(f-5) (West 2008). For the reasons stated above in section three of this opinion, the Children's Advocacy Center charge is appropriately characterized as a fine rather than a fee. Defendant's preliminary hearing fee is a fee, not a fine, and therefore cannot be offset by the credit. In addition, defendant's Arrestee's Medical Costs Fund fee is a fee, not a fine, and also cannot be offset by the credit. Finally, defendant's Violent Crime Victims Assistance Fund fine is not eligible for reduction. 725 ILCS 240/10(b) (West 2008). Section 10(b) of the Violent Crime Victims Assistant Act states, in pertinent part: "Such additional penalty shall not be considered a part of the fine for purposes of any reduction made in the fine for time served either before or after sentencing." 725 ILCS 240/10(b) (West 2008).

We therefore order that the $30 Children's Advocacy Center fine be offset by defendant's presentencing credit.

CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court of Cook County with the following modifications to the mittimus and to the fines, fees, and costs order: (1) the clerk should amend the mittimus to reflect 212 days of presentencing credit for time served; (2) we affirm the assessment of the $20 preliminary examination fee (55 ILCS 5/4-2002.1(a) (West 2008)); (3) the clerk should amend the fines, fees, and costs order to reflect a $4 Violent Crime Victims Assistance Fund fee (725 ILCS 240/10(b) (West 2008)); (4) we affirm the assessment of the $10 Arrestee's Medical Costs Fund fine (730 ILCS 125/17 (West 2006)); and (5) defendant's $30 Children's Advocacy Center fine should be offset by defendant's presentence credit for time served. This order reduces defendant's total amount owed to $539 (725 ILCS 5/110-14(a) (West

17

1-08-1311

2008)).

Affirmed; mittimus and fines, fees, and costs order modified.

CAHILL, P.J., and J. GORDON, J., concur.