2021 IL App (1st) 190950-U

No. 1-19-0950

Order filed February 26, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 6895 |
| | ) | |
| AARON REDMOND, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for delivery of a controlled substance because the fact finder could reasonably accept the witnesses' testimony as credible.

¶ 2    Following a bench trial, defendant Aaron Redmond was found guilty of delivery of a controlled substance (720 ILCS 570/401(d) (West 2018)) and sentenced to six years' imprisonment. On appeal, defendant argues his conviction should be reversed because the State

did not plausibly explain the fact that defendant was not arrested in possession of a prerecorded bill following a drug sale to an undercover officer. We affirm.

¶ 3     Defendant was indicted on one count of delivery of a controlled substance, specifically less than one gram of cocaine or an analog thereof.

¶ 4     At trial, Chicago police detective Kevin Schmit testified that on April 20, 2018, shortly before 4:43 p.m., he was working undercover with a team that included surveillance and enforcement officers. At the northwest corner of Madison Street and Pulaski Road in Chicago, he heard someone say "rocks," which he knew to be a word for crack cocaine from his experience purchasing drugs undercover. Schmit turned around and saw an individual whom he identified in court as defendant. No one else was in defendant's immediate vicinity.

¶ 5     Schmit asked defendant, "Do you have any?" and defendant responded, "yes." The two men walked to a nearby bus stop on Madison, and defendant shouted across the street. Another individual, whom Schmit later learned was Roderick Davis, crossed the street and asked if defendant knew Schmit. Defendant stated, "yes." Davis and defendant then spoke 5 to 10 feet from Schmit. Defendant returned and handed Schmit two clear zipper top bags containing a white rock-like substance, and Schmit gave defendant "a 20-dollar bill, 1505 funds." Afterwards, Schmit walked away and radioed other officers a description of defendant and Davis. Officers detained defendant and Davis, and another officer drove Schmit past them and he identified them. Schmit took the two zipper top bags to the police station and inventoried them under inventory number 14153203.

¶ 6     On cross-examination, Schmit testified that, on the radio, he described the person who sold him drugs as a black man wearing a black coat and blue jeans, but did not mention his

height and could not recall providing an age. Two or three minutes passed between Schmit leaving the area and defendant being detained. Schmit identified Defense Exhibit No. 1 as a photograph of the northwest corner of Madison and Pulaski and marked where the drug sale occurred, just west of the bus stop. He also marked the location of the transaction in Defense Exhibit No. 2, which depicted the area from "a different angle."

¶ 7   Chicago police officer Andrew Sherman testified that he surveilled Schmit from an unmarked van parked 15 to 20 yards away in a vacant lot north of Madison, and observed him speak with defendant, whom Sherman identified in court. Defendant contacted Davis, who crossed the street and spoke with defendant. Then, defendant resumed talking to Schmit, before returning to Davis and "exchang[ing]" a "small item." Defendant returned to Schmit and exchanged a "small item" in a hand-to-hand transaction. Schmit walked away, but defendant stayed by a bus stop with Davis and several other people.

¶ 8   Sherman heard Schmit confirm the transaction on the radio, and observed defendant and Davis walk east behind a building as enforcement vehicles arrived. Sherman "lost sight for a second" before the enforcement officers stopped defendant and Davis. He identified Defense Exhibit No. 2 as a photograph of the northwest corner of Pulaski and Madison, which depicted the bus stop, the vacant lot north of Madison where he was parked behind a building, and a building directly to the east of the lot on the corner, and he marked the lot.

¶ 9   On cross-examination, Sherman testified that he could not hear the conversations that took place and did not see currency exchanged. He did not know where other surveillance officers were located. Two or three minutes elapsed from the time that Schmit left until defendant was detained, and he did not observe any additional hand-to-hand transactions. He lost

sight of defendant and Davis when they walked "just past the corner" of a building as enforcement officers exited a vehicle. Sherman did not write in his report that he lost sight of defendant, but explained that "the individuals were never out of the sight of an officer" because the enforcement vehicle was parking as defendant and Davis passed the corner. He did not take any video or photographs of the drug sale, but camera or video equipment was available.

¶ 10    Chicago police officer Justin Homer testified that he worked as an enforcement officer. After Schmit radioed to report a narcotics transaction and a description of the person with whom he interacted, Homer went to Madison and Pulaski and saw an individual matching the description. He identified defendant in court as that person. Defendant was standing in a vacant lot on Madison with a group of people. Homer brought defendant to Homer's vehicle where they waited for Schmit, who identified defendant. Homer then arrested defendant and searched him, but recovered nothing.

¶ 11    On cross-examination, Homer specified that no narcotics or 1505 funds were recovered after the custodial search of defendant. The description he received was of a Black man wearing a black coat and blue jeans. Schmit made the identification from a vehicle on Madison as another officer drove him, while Homer and defendant stood in front of Homer's vehicle. He did not wear a body camera during the incident.

¶ 12    The State entered a stipulation that, if called, Illinois state police forensic chemist Rosa Lopez would testify that she received a heat-sealed envelope marked inventory number 14153203, which contained two items containing a chunky substance. Lopez tested the contents of one of the items, which tested positive for cocaine and weighed 0.1 grams. Together, the two items weighed 0.2 grams.

¶ 13    Defense counsel moved to "strike the identification marks" from Defense Exhibit No. 2 and admit "just" that exhibit into evidence. The court did so.[1] Defendant did not testify or present evidence. In closing, defense counsel argued there was insufficient evidence because no 1505 funds or narcotics were on defendant when he was arrested, and the probability of misidentification was high.

¶ 14    The court recounted the testimony and found defendant guilty of delivery of a controlled substance. The court recognized that "the 1505 funds were not recovered, [but] the defendant was standing with Roderick Davis. There were other people in the area as well."

¶ 15    Defendant filed a motion for new trial, which he amended, arguing in part that he was misidentified as the seller based on the seller's vague description, and the lack of 1505 funds or contraband on his person. The court denied the amended motion. Following a sentencing hearing, the court found that Class X sentencing was mandatory based on defendant's background and sentenced him to six years' imprisonment. Defendant filed a motion to reconsider sentence, which was denied.

¶ 16    On appeal, defendant argues that he was not proven guilty beyond a reasonable doubt because the State did not plausibly explain the officers' failure to recover a prerecorded bill from his person.

¶ 17    When a defendant contests the sufficiency of the evidence brought at trial, the appellate court, after reviewing the evidence in the light most favorable to the State, must determine if any rational trier of fact could have found each element of the crime proven beyond a reasonable

---

[1] The record on appeal contains two photographs marked as Defense Exhibit No. 2. One bears Schmit's mark showing the location of the transaction, and Sherman's mark showing the lot where he conducted surveillance. The second is a black and white photograph depicting the southwest corner of Madison and Pulaski.

doubt. *People v. Murray*, 2019 IL 123289, ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The appellate court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). The trier of fact is responsible for determining the witnesses' credibility and the weight given to their testimony, resolving conflicts in the evidence, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "[W]e will not substitute our judgment for that of the trier of fact on these matters." *Id.* Therefore the trier of fact's findings are entitled to deference, although they are not conclusive. *Murray*, 2019 IL 123289, ¶ 19. A conviction will not be reversed " 'unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 18    A single witness's testimony is sufficient evidence to convict if the testimony is positive and credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Contradictory evidence, or minor or collateral discrepancies in testimony, do not automatically render the totality of a witness's testimony incredible. *Id.* ¶ 47. Instead, discrepancies in the testimony of witnesses are an issue for the trier of fact, which may "accept or reject as much or as little of a witness's testimony as it pleases." (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67. The appellate court must determine if, "in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). When reviewing testimony, the appellate court may not retry the defendant. *Id.*

¶ 19    Defendant was found guilty of delivery of a controlled substance, specifically less than one gram of cocaine or an analog thereof. 720 ILCS 570/401(d) (West 2018).

¶ 20    Defendant does not challenge whether the substance at issue contained cocaine, but contends that the evidence was insufficient because no prerecorded bill was recovered from his person when he was arrested. Furthermore, he argues that the State could not explain the bill's absence given that no officer testified to seeing defendant dispose of the bill, and Sherman's testimony that he lost sight of defendant as defendant rounded a corner of a building contradicted Homer's testimony that he found defendant in a vacant lot.

¶ 21    After viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we find a rational trier of fact could have determined that defendant delivered a controlled substance to Schmit.

¶ 22    Here, Schmit heard someone say "rocks," a word for crack cocaine. He turned around and asked if defendant had any, and defendant responded yes. Sherman, who was nearby in a vacant lot, witnessed defendant speak with Schmit and then with Davis, and exchange a "small item" with Davis. Defendant then engaged in a hand-to-hand transaction with Schmit. Schmit testified he exchanged a $20 bill, 1505 funds, for drugs from defendant. Afterwards, Sherman watched defendant as he stood in a crowd before walking with Davis just past the corner of a building, out of Sherman's sight, as enforcement officers arrived. Homer testified he approached defendant, who was in a group in a vacant lot, and took him aside. After Schmit identified defendant, Homer arrested and searched defendant but did not recover 1505 funds. The items Schmit received from defendant tested positive for cocaine.

¶ 23    Ultimately, it was the fact finder's responsibility to weigh Schmit's testimony, which was corroborated, and determine what the failure to recover the 1505 funds had on his credibility. "[T]here is no requirement that pre-recorded or marked funds used in a narcotics transaction be

recovered for a conviction [for delivery of a controlled substance] to stand." *People v. Trotter*, 293 Ill. App. 3d 617, 619 (1997); see also *People v. Brown*, 388 Ill. App. 3d 104, 108-09 (2009) (affirming a conviction for delivery of a controlled substance where pre-recorded funds were not recovered, as it was "for the jury to weigh the testimony, which was corroborated in many respects, and determine its effect" on the officer's credibility). Neither Sherman nor Homer saw defendant dispose of the bill, but Sherman witnessed the hand-to-hand transaction between Schmit and defendant. The trial court recognized the funds were not recovered, but observed that defendant stood near Davis and others after the sale. See *People v. Evans*, 209 Ill. 2d 194, 212 (2004) (a fact finder is not required "to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt" (internal quotation marks omitted)).

¶ 24    Furthermore, Sherman stated that he lost sight of defendant when defendant rounded the corner of a building as enforcement officers arrived. Defendant maintains that he could never have left Sherman's sight, as Homer testified that he encountered defendant in a vacant lot and the only vacant lot visible in Defense Exhibit No. 2 would have been the lot Sherman was watching from.[2] To the extent Sherman's and Homer's testimony may have conflicted, however, the trier of fact was charged with weighing their evidence and choosing what to accept and what to reject. See *Peoples*, 2015 IL App (1st) 121717, ¶¶ 66-67, 71 (finding evidence was sufficient to prove defendant guilty where three witnesses to a shooting gave contradictory information on location of the defendant and other occupants in vehicle, but agreed on their identities). We conclude that the evidence, viewed in the light most favorable to the State, was sufficient to

_____

[2] Appellate counsel refers to one of the two photos marked as Defense Exhibit No. 2 as Defense Exhibit No. 1 in his reply brief.

prove defendant guilty beyond a reasonable doubt. See *Gray*, 2017 IL 120958, ¶ 47 ("Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief.")

¶ 25    The judgment of the circuit court of Cook County is affirmed.

¶ 26    Affirmed.