Sixth Division
March 31, 2011

No. 1-09-1528

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 08 CR 19320 |
| | ) | |
| MARTINELL ANTHONY, | ) | Honorable |
| | ) | Lawrence Edward Flood, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Garcia concurred in the judgment and opinion.
Justice R. E. Gordon dissented, with opinion.

OPINION

Following a bench trial, defendant, Martinell Anthony, was convicted of two counts of unlawful possession of a weapon by a felon and sentenced to concurrent terms of six years' imprisonment. On appeal, defendant contends that one of his convictions must be vacated because it was unauthorized by statute. Defendant also disputes various fines and fees imposed against him.

Defendant was arrested and charged by information with, among other things, two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2008)) and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2008)). The two counts of unlawful possession of a weapon by a felon were based upon possession of a handgun and possession of the firearm ammunition inside that handgun. Specifically, the first count alleged that defendant "knowingly possessed on or about his person *** a handgun, after having been previously convicted of the felony offense of burglary." The second count alleged that defendant

"knowingly possessed on or about his person any firearm ammunition, after having been previously convicted of the felony offense of burglary." The charge of aggravated unlawful use of a weapon alleged that defendant "knowingly carried in any vehicle *** a handgun, *** and the firearm possessed was uncased, loaded and immediately accessible at the time of the offense, and [defendant] has been previously convicted of *** burglary." The following evidence was presented at defendant's trial.

On September 11, 2008, at approximately 8 p.m., Chicago police officer Christopher Ware was in the parking lot of the 63rd Street Beach in Chicago, IL. The parking lot was lit by moonlight and artificial lighting in the lot. Officer Ware saw a woman sitting in the passenger seat of a vehicle and a man, whom he identified as defendant, standing near the vehicle holding a semi-automatic handgun. Defendant put the gun in his pocket and entered the driver's seat of the vehicle. Officer Ware approached and told defendant to exit the vehicle. He asked defendant what he had been holding in his hand, and defendant replied that it was a cell phone. Officer Ware conducted a protective pat-down of defendant but did not discover a weapon. Defendant said the cell-phone he had been holding was inside the vehicle and gave the officer permission to search the vehicle. Upon a search of that vehicle, the officer found a loaded semiautomatic handgun under a jacket behind the front passenger seat that he believed was the same gun that he had seen defendant holding. A further search of the vehicle revealed a backpack under the rear seat that contained two handgun magazines and approximately 96 rounds of ammunition.

Defendant called his brother-in-law, Derrick Harris, as a witness. Harris owned the vehicle in which the weapons were found and he explained that, on the night of the incident, he

and defendant had gone to the beach with two women. Harris was approximately 35 feet away from defendant when the police arrived and he did not see defendant with the weapon that the police recovered on the night of the incident. Harris testified that he was a Navy officer and that he was the owner of the .45 caliber semiautomatic handgun and the ammunition that the police found in his vehicle.

Following closing arguments, the trial court found defendant guilty of two counts of unlawful possession of a weapon by a felon based upon possession of the firearm and possession of the ammunition inside that firearm.[1] The court also found defendant guilty of one count of aggravated unlawful possession of a weapon, but merged that conviction into the first count of unlawful possession of a weapon by a felon. The court clarified that "the ammunition found inside the backpack at the rear of the vehicle "isn't a consideration by this court as far as these charges are concerned." The court sentenced defendant to concurrent terms of six years' imprisonment. This appeal followed.

Initially, a question was raised whether aggravated unlawful use of a weapon was a greater offense than unlawful use of a weapon by a felon. Although each offense is a Class 2 felony, the sentencing provision for unlawful use of a weapon by a felon provides for a sentence of 3 to 14 years' imprisonment (see 720 ILCS 5/24-1.1(e) (West 2008)), whereas the sentencing provision for aggravated unlawful use of a weapon provides for a sentence of 3 to 7 years' imprisonment (see 720 ILCS 5/24-1.6(d)(3) (West 2008)). But *cf People v. Johnson*, 237 Ill. 2d

---

[1]During trial, the State introduced a certified copy of defendant's prior conviction for the forcible felony of burglary.

81 (2010)). The parties and this court now agree that unlawful use of a weapon by a felon is the greater offense in this case.

Defendant first contends that one of his convictions for unlawful possession of a weapon should be vacated because the legislature did not intend to permit multiple convictions based upon the possession of a single, loaded firearm. Defendant did not preserve this issue in the trial court and asks that we review it for plain error. The plain error doctrine allows a reviewing court to address defects affecting substantial rights (1) if the evidence is closely balanced or (2) if fundamental fairness so requires rather than finding the claims waived. *People v. Carter*, 213 Ill. 2d 295, 299 (2004). Defendant does not claim that the evidence in this case was closely balanced but, rather, he points out that our supreme court has held that "the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule." *People v. Harvey*, 211 Ill. 2d 368, 389 (2004); see also *Carter*, 213 Ill. 2d at 299 (considering the question of whether multiple convictions could be entered for unlawful possession of weapons by a felon based on simultaneous possession of two guns and ammunition for those guns under the second prong of the plain error doctrine). However, "[t]he first step of plain-error review is to determine whether any error occurred." *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Accordingly, we first consider whether defendant's multiple convictions constituted error.

The question of whether the unlawful possession of a weapon by a felon statute permits separate offenses to be charged for simultaneous possession of a handgun and the firearm

4

ammunition inside of that handgun is an issue of first impression.[2] The interpretation of a statute is a question of law that is reviewed *de novo*. *Carter*, 213 Ill. 2d at 301. Our primary objective when construing a statute is to ascertain and give effect to the intent of the legislature. *Carter*, 213 Ill. 2d at 301. We begin by examining the language of the statute, which is "the surest and most reliable indicator of legislative intent." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Where the language of the statute is clear and unambiguous, it must be read and given effect without exception, limitation, or other condition. *Carter*, 213 Ill. 2d at 301.

In this case, the plain and unambiguous language of the statute allows for multiple convictions based upon simultaneous possession of a firearm and firearm ammunition. Section 24-1.1 makes it unlawful for a person who has been convicted of a felony to possess "any firearm or any firearm ammunition." 720 ILCS 5/24-1.1(a) (West 2008). More importantly, the statute provides that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). It is undisputed that in the present case, defendant was found to be in possession of both a firearm and firearm ammunition. Therefore, we conclude that the plain language of the statute permits defendant's multiple convictions for unlawful possession of a weapon by a felon.

Defendant nevertheless relies upon our supreme court's decision in *Carter* to assert that the statute is ambiguous and that it therefore must be construed to prohibit his conviction for unlawful possession of a weapon based upon the ammunition inside the firearm.

---

[2] Although an issue of first impression, at least one case suggests in a footnote that the amended statute permits convictions for both the firearm and firearm ammunition. See *People v. Lee*, 379 Ill. App. 3d 533, 538 n.2 (2008).

5

In *Carter*, the defendant was found in possession of two loaded semiautomatic weapons, a .22-caliber handgun and a .25-caliber handgun, and an ammunition clip containing .22-caliber bullets. The defendant was charged with and convicted of, among other things, four counts of unlawful possession of weapons by a felon. Those four counts were based upon the defendant's possession of a .22-caliber handgun, a .25-caliber handgun, and ammunition for the .22-caliber handgun. *Carter*, 213 Ill. 2d at 298. On appeal, the supreme court was asked to determine "whether multiple convictions can be entered for unlawful possession of weapons by a felon based on the simultaneous possession of two guns and the ammunition for those guns." *Carter*, 213 Ill. 2d at 299. The defendant argued that nothing in the statute indicated that each article of contraband possessed constituted a separate offense and that any ambiguity in the statute should be resolved in his favor. The defendant further argued that because all four of his convictions for unlawful possession were based on a single, simultaneous act of possession, three of his convictions had to be vacated under the one-act, one-crime rule. *Carter*, 213 Ill. 2d at 300.

The court stated that whether the legislature intended for the simultaneous possession of weapons and ammunition to be the same offense or separate offenses required it to determine the statute's "'allowable unit of prosecution.'" *Carter*, 213 Ill. 2d at 302, quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 220-21, 73 S. Ct. 227, 229, 97 L. Ed. 260, 263-64 (1952). The court found that the statute neither prohibited nor permitted the State to bring separate charges for the simultaneous possession of firearms and firearm ammunition because the term "any," as used in the statute making it unlawful for a felon to possess "any firearm or any firearm ammunition," could mean either singular or plural. *Carter*, 213 Ill. 2d at 301-02. The

court thus found that the term "any" in the statute did not adequately define the allowable unit of prosecution and that the statute was therefore ambiguous. As such, the rule of lenity required the court to construe the statute in the defendant's favor. *Carter*, 213 Ill. 2d at 302.

The court then noted that it had consistently held that, "where a statute is ambiguous, in the absence of a statutory provision to the contrary, simultaneous possession could not support multiple convictions." *Carter*, 213 Ill. 2d at 302. The court cited to its prior decision in *People v. Manning*, 71 Ill. 2d 132 (1978), in which the defendant was found guilty of two counts of possession of controlled substances. In *Manning*, 71 Ill. 2d at 137, the State argued that the defendant committed two separate offenses in that he knowingly possessed two types of controlled substances, and the defendant asserted that his simultaneous possession of both substances arose out of a single act. The court held that "in the absence of a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance, under the circumstances shown on this record, constituted a single offense, and only one sentence should have been imposed." *Manning*, 71 Ill. 2d at 137.

Our supreme court acknowledged in *Carter* that its decision in *Manning* had been superceded by an amendment to the Illinois Controlled Substances Act (the Act) which expressly authorized multiple convictions where a defendant simultaneously possesses more than one type of controlled substance. See 720 ILCS 570/402 (West 2004) ("[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act"). The court noted that the amendment to the Act demonstrated that the legislature "knows how to authorize, specifically, multiple convictions for simultaneous violations

of a single criminal statute." *Carter*, 213 Ill. 2d at 303. The court also indicated its agreement with the State that "a felon who possesses a loaded gun may be more dangerous than a felon who possesses a gun but no ammunition." *Carter*, 213 Ill. 2d at 306. However, the court noted that it was for the legislature to define that allowable unit of prosecution and held that "under the facts of this record, in the absence of a specific statutory provision to the contrary, the simultaneous possession of two firearms and firearm ammunition constituted a single offense, and that only one conviction for unlawful possession of weapons by a felon could be entered." *Carter*, 213 Ill. 2d at 303-04.

After *Carter*, the legislature amended the unlawful possession of a weapon by a felon statute by adding the language providing that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate offense." 720 ILCS 5/24-1.1(e) (West 2008). Defendant acknowledges that the amendment to the statute "indicates that two convictions are proper if a defendant possesses two firearms or if he separately possesses a firearm and firearm ammunition." He claims, however, that the statute does not address the circumstances in this case or authorize a second conviction based solely upon the fact that the firearm found in defendant's possession was loaded with ammunition. Defendant asserts that, as in *Carter*, the statute "neither prohibits nor permits the State to bring separate charges for the simultaneous possession of firearms and firearm ammunition." Therefore, defendant concludes, the statute does not adequately define the allowable unit of prosecution and must be construed in his favor so as to prohibit his conviction for unlawful possession of a weapon based upon the ammunition inside of the handgun. We disagree.

8

As we previously found, the plain language of the statute allows for multiple convictions based upon possession of both a firearm and firearm ammunition. The statute contains no exception for situations in which the ammunition is loaded inside of the handgun. Because the language of the statute is clear and unambiguous, we will not interpret the statute so as to create such an exception. See *Carter*, 213 Ill. 2d at 301; *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) ("Where an enactment is clear and unambiguous, the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express"). Additionally, defendant acknowledges that multiple convictions for simultaneous possession of a firearm and separate firearm ammunition are proper under the amended statute but claims that multiple convictions for possession of a loaded firearm are improper. Taking defendant's argument to its logical conclusion would result in a greater punishment for a felon who possessed an unloaded firearm and separately possessed firearm ammunition than would result for a felon who possessed a loaded firearm. A reviewing court may not interpret a statute in a way that produces absurd results. *Pullen*, 192 Ill. 2d at 42; *People v. Kohl*, 364 Ill. App. 3d 495, 501 (2006). Defendant's interpretation of the statute would produce such a result.

In addition, there is no dispute that the statute was amended in response to the decision in *Carter*, and we note that two of the defendant's convictions in that case were based upon possession of a loaded handgun. See *Carter*, 213 Ill. 2d at 298. Moreover, when the legislature amended the unlawful possession of a weapon by a felon statute, it did so by adding almost the identical language that was added to the Controlled Substances Act and that the supreme court in

9

*Carter* recognized expressly authorized multiple convictions based upon simultaneous possession of different drugs. See *Carter*, 213 Ill. 2d at 303. In *Carter*, our supreme court also stated that this amendment to the Controlled Substances Act demonstrated that the legislature knew how to authorize multiple convictions for simultaneous violations of a single criminal statute. In this case too, through the amendment to the unlawful possession of a weapon by a felon statute, the legislature has specifically authorized multiple convictions for simultaneous violations of the statute. Defendant committed simultaneous violations of statute by possessing both a firearm and firearm ammunition, and we find no error in his multiple convictions based upon that simultaneous possession. Because we find no error, there can be no plain error. See *People v. Nicholas*, 218 Ill. 2d 104, 121 (2006).

Defendant also claims that the legislative history shows that the amendment to the statute was not intended to permit multiple convictions based upon a loaded firearm. However, where the language of a statute is plain and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Collins*, 214 Ill. 2d at 214. Where statutory language is ambiguous, however, we may consider other extrinsic aids for construction, such as legislative history and transcripts of legislative debates, to resolve the ambiguity. *Collins*, 214 Ill. 2d at 214. In this case, the language of the unlawful possession of a weapon statute is clear and unambiguous. Accordingly, we will not interpret the statute by considering extrinsic aids such as legislative history. See *Collins*, 214 Ill. 2d at 214.

Defendant next contends that several of the fines and fees assessed against him must be vacated. He also claims that he is entitled to have presentence credit applied toward some of

1-09-1528

those fines. "The propriety of a trial court's imposition of fines and fees raises a question of statutory interpretation, which we review *de novo*." *People v. Price*, 375 Ill. App. 3d 684, 697 (2007).

The State initially argues that defendant has forfeited these claims because he failed to raise any issue regarding the fines he was assessed in his motion to reconsider his sentence. Defendant acknowledges his failure to do so, but he points out that the issue of whether a sentence is authorized by statute or a defendant is entitled to presentence credit against a fine is not subject to forfeiture and may be raised for the first time on appeal. See, *e.g.*, *People v. Thompson*, 209 Ill. 2d 19, 24 (2004) (a sentence not authorized by statute is void and can be attacked at any time and in any court); *People v. Woodard*, 175 Ill. 2d 435, 457 (1997). Accordingly, we review the fines and fees levied against defendant to determine if they were authorized by statute.

Defendant first challenges his $200 assessment for DNA analysis pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2008)). Section 5-4-3(a) provides that "[a]ny person *** convicted or found guilty of any offense classified as a felony under Illinois law *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section." 730 ILCS 5/5-4-3(a) (West 2008). Section 5-4-3(j) then provides that "[a]ny person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200."

11

1-09-1528

730 ILCS 5/5-4-3(j) (West 2008).

Defendant claims that the $200 DNA fee was improperly assessed against him because he previously submitted a DNA sample in connection with a prior felony conviction for burglary or possession of a controlled substance. Defendant asserts that the statute contemplates the imposition of a single, one-time fee and does not authorize additional assessments.

A split of authority has recently developed among the various districts and divisions of this court as to whether or not a defendant should be assessed the $200 DNA fee when he has already been assessed that fee in conjunction with a prior conviction. In *People v. Hubbard*, 404 Ill. App. 3d 100, 103 (2010), this court analyzed the statutory language of section 5-4-3 and agreed with the holdings in *People v. Grayer*, 403 Ill. App. 3d 797 and *People v. Marshall*, 402 Ill. App. 3d 1080, 1082-83 (2010), *appeal allowed*, 237 Ill. 2d 577, that a defendant may be ordered to submit a DNA sample and be assessed the DNA fee regardless of whether a DNA sample was previously ordered or the fee was previously assessed. The reasoning in these decisions was that the legislature was aware of recidivism but that the statute did not limit the taking of DNA samples or the assessment of the analysis fee to a single instance. *Hubbard*, 404 Ill. App. 3d at 102; *Grayer*, 403 Ill. App. 3d at 801; *Marshall*, 402 Ill. App. 3d at 1083. These decisions also found no injustice or significant inconvenience in collecting a new DNA sample whenever a defendant is newly convicted of a qualifying offense based upon the recognition of two reasons for doing so: obtaining fresh samples and the ability to subject new samples to new methods of collecting, analyzing, and categorizing DNA samples. *Hubbard*, 404 Ill. App. 3d at 102; *Grayer*, 403 Ill. App. 3d at 801-02. Recently, in *People v. Adair*, No. 1-09-2840, slip op. at 19-

12

1-09-1528

20 (Ill. App. Dec. 10, 2010), this court continued to follow the holding in cases such as *Hubbard* and added that the collected fees may be used to cover a variety of costs incurred by the State crime laboratory. See also *People v. Williams*, No. 1-09-1667 (Ill. App. December 2, 2010) (following *Hubbard*, *Grayer*, and *Marshall*). Other decisions, however, have reached a contrary result. See *People v. Evangelista*, 393 Ill. App. 3d 395 (2d Dist. 2009) (vacated fee on State's confession of error); *People v. Willis*, 402 Ill. App. 3d 47 (1st Dist. Div. 5, May 21, 2010) (followed *Evangelista* and vacated fee where record showed it was previously assessed); *People v. Unander*, No. 4-09-0411, slip op. at 2 (4th Dist. October 26, 2010) (vacated fee where court ordered defendant to submit a sample and pay the fee only if he " 'had not already done so' " and the record showed he had previously done so). In this case, we follow the holdings in *Hubbard* and *Adair* and find that defendant was properly assessed the DNA fee, regardless of whether he was previously ordered to submit a DNA sample or pay the corresponding DNA fee.

Defendant argues in the alternative that he is entitled to have the $200 DNA ID System Fee offset by his presentence credit because the charge is a "fine" and not a "fee." Defendant cites to *People v. Long*, 398 Ill. App. 3d 1028 (4th Dist. 2010), in support of his contention. See also *People v. Mingo*, 403 Ill. App. 3d 968 (2010); *People v. Clark*, 404 Ill. App. 3d 141 (2010) (following *Long*).

In *Williams*, slip op. at 6, this district agreed with the holding in *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006), that the DNA analysis fee is a charge intended to compensate the State in part for the cost of obtaining DNA analysis for convicted defendants and therefore is not subject to preincarceration credit. Moreover, *Long* is distinguishable from the present case. In

13

*Long*, 398 Ill. App. 3d at 1033-34, the State argued that the DNA analysis fee is a fine and conceded that it was subject to the credit. In this case, the State argues that the DNA analysis fee is a fee and contests the applicability of the credit. *Long* preceded our decisions in *Hubbard* and *Grayer*, in which we found that there are rational bases for the State to collect DNA samples and assess the DNA analysis fee after doing so upon an earlier conviction. That finding supports our conclusion that the DNA analysis fee is compensatory rather than punitive, which is the key factor in determining whether a charge is a fine or a fee. *People v. Graves*, 235 Ill. 2d 244 (2009); *People v. Jones*, 223 Ill. 2d 569 (2006). Finally, *Long* noted the court's statement in *Jones* that a fee or cost is intended to reimburse the State for some cost incurred in a defendant's prosecution and found that "any costs incurred by the State in relations to defendant's DNA specimen were incurred after his prosecution, conviction, and sentence." *Long*, 398 Ill. App. 3d at 1034, citing Jones, 223 Ill. 2d at 600. However, our supreme court has since clarified that "the most important factor is whether the charge seeks to compensate the state for any costs incurred *as the result of* prosecuting the defendant." (Emphasis added.) *Graves*, 235 Ill. 2d at 250.

In *Graves* and *Jones*, our supreme court has distinguished fines on one hand from fees and costs on the other:

> " 'A "fine" is a pecuniary punishment imposed as part of a
> sentence on a person convicted of a criminal offense. [Citation.] A
> "cost" is a charge or fee taxed by a court such as a filing fee, jury
> fee, courthouse fee, or reporter fee. [Citation.] Unlike a fine,
> which is punitive in nature, a cost does not punish a defendant in

14

> addition to the sentence he received, but instead is a collateral consequence of the defendant's conviction that is *compensatory in nature*. [Citation.] A "fee" is a charge for labor or services, especially professional services. [Citation.]' " (Emphasis in original.) *Jones*, 223 Ill. 2d at 581, quoting *People v. White*, 333 Ill. App. 3d 777, 781 (2002).

In other words, a "fine" is a pecuniary punishment for a criminal conviction, payable to the public treasury, while a "fee" or "cost" seeks to recoup expenses incurred by the State or to compensate the State for some expenditure incurred as the result of prosecuting a defendant. *Graves*, 235 Ill. 2d at 250; *Jones*, 223 Ill. 2d at 582.

The DNA analysis fee does not go into the general fund of the State treasury but exclusively to the State Police laboratory, except for a $10 portion of each fee for the clerk of the circuit court to offset his or her costs in implementing the DNA analysis statute. 730 ILCS 5/5-4-3(j) (West 2008). The DNA analysis fee reimburses the State for the expense of operating a system under which this defendant's DNA profile was required to be processed and analyzed as a result and collateral consequence of this prosecution and conviction. We therefore find that the DNA analysis fee is a fee not subject to presentence credit. See *Williams*, slip op. at 6.

Next, defendant claims, and the State concedes, that the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)) must be vacated because his convictions were not for violations of the Illinois Vehicle Code or similar provisions. The statute authorizes:

> "A $5 fee to be paid by the defendant on a judgment of

15

guilty or a grant of supervision for violation of the Illinois Vehicle

Code other than Section 11-501 or violations of similar provisions

contained in county or municipal ordinances committed in the

county, and up to a $30 fee to be paid by the defendant on a

judgment of guilty or a grant of supervision for violation of Section

11-501 of the Illinois Vehicle Code or a violation of a similar

provision contained in county or municipal ordinances committed in

the county." 720 ILCS 5/5-1101(a) (West 2008).

We agree with the parties and find that the $5 court system fee must be vacated because defendant's convictions were not for violations of the Illinois Vehicle Code or a similar county or municipal ordinance. See *Adair*, slip op. at 22 (vacating the court system fee where the defendant was convicted of possession of a controlled substance because the fee applies only to convictions for violations of the Illinois Vehicle Code or a similar municipal ordinance); *Willis*, 402 Ill. App. 3d 47 (2010) (vacating the court system fee where the defendant was convicted of possession of a controlled substance, an offense not related to the Illinois Vehicle Code or a similar municipal ordinance).

Defendant next claims that the $25 court services fee assessment must be vacated because it applies only to the offenses enumerated in the statute and because he was not convicted of one of those offenses. See 55 ILCS 5/5-1103 (West 2008). Section 5-1103 of the Counties Code provides:

"A county board may enact by ordinance or resolution a

court services fee dedicated to defraying court security expenses incurred by the sheriff in providing court services or for any other court services deemed necessary by the sheriff to provide for court security. *** Such fee shall be paid in civil cases by each party at the time of filing the first pleading, paper or other appearance. *** In criminal, local ordinance, county ordinance, traffic and conservation cases, such fee shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction, or order of supervision, or sentence of probation without entry of judgment pursuant to Section 10 of the Cannabis Control Act, Section 410 of the Illinois Controlled Substances Act, Section 70 of the Methamphetamine Control and Community Protection Act, Section 12-4.3 of the Criminal Code of 1961, Section 10-102 of the Illinois Alcoholism and Other Drug Dependency Act, Section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act, or Section 10 of the Steroid Control Act. In setting such fee, the county board may impose, with the concurrence of the Chief Judge of the judicial circuit in which the county is located by administrative order entered by the Chief Judge, differential rates for the various types or categories of criminal and civil cases, but the maximum rate shall

not exceed $25. All proceeds from this fee must be used to defray court security expenses incurred by the sheriff in providing court services. No fee shall be imposed or collected, however, in traffic, conservation, and ordinance cases in which fines are paid without a court appearance. The fees shall be collected in the manner in which all other court fees or costs are collected and shall be deposited into the county general fund for payment solely of costs incurred by the sheriff in providing court security or for any other court services deemed necessary by the sheriff to provide for court security." 55 ILCS 5/5-1103 (West 2008).

We initially note that defendant has failed to support his contention with any analysis of the statute or citation to relevant authority. See 210 Ill. 2d R. 341(h)(7) (appellant's brief is required to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Nevertheless, this court recently considered the same argument defendant raises in this case and held that the court services fee was properly assessed even though the offense for which the defendant was convicted in that case, possession of a controlled substance, was not listed in the statute. *Adair*, slip op. at 22. The court reasoned:

"Based on the encompassing language of the statute and its clear purpose of defraying court security expenses, we are unpersuaded that the failure to list the offenses the defendant committed means

18

he cannot be required to defray the expenses incurred by the sheriff for his court proceedings. We reject the defendant's reading of the statute as authorizing a court services fee only for a conviction involving the single section of the Criminal Code of 1961 listed, section 5/12-4.3 (aggravated battery of a child). The limited application of section 5-1103 in criminal proceedings the defendant advocates is inconsistent with the legislature's clear intent, expressed in the plain language of the statute, in enacting such a fee." *Adair*, slip op. at 21-22.

The same result was reached by the court in *Williams*, slip op. at 5, which held that "the statute permits assessment of this fee upon any judgment of conviction." We follow the holdings in *Adair* and *Williams* and therefore find that the court services fee was properly assessed following defendant's convictions.

Defendant also claims that the imposition of the $10 county jail medical fund fee was unauthorized because he required no medical attention during custody. See 730 ILCS 125/17 (West 2008). At the time of defendant's offense, in September of 2008, the statute provided:

"An arresting authority shall be responsible for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff. However, the arresting authority shall not be so responsible if the arrest was made pursuant to a request by the sheriff. When medical expenses are required by

19

any person held in custody, the county shall be entitled to obtain reimbursement from the County Jail Medical Costs Fund to the extent moneys are available from the Fund. To the extent that the person is reasonably able to pay for that care, including reimbursement from any insurance program or from other medical benefit programs available to the person, he or she shall reimburse the county.

The county shall be entitled to a $10 fee for each conviction or order of supervision for a criminal violation, other than a petty offense or business offense. The fee shall be taxed as costs to be collected from the defendant, if possible, upon conviction or entry of an order of supervision. The fee shall not be considered a part of the fine for purposes of any reduction in the fine.

All such fees collected shall be deposited by the county in a fund to be established and known as the County Jail Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement to the county of costs for medical expenses and administration of the Fund." 730 ILCS 125/17 (West 2008).

We initially note that the current version of the statute, set forth above, is the result of an amendment to the statute which occurred approximately one month prior to defendant's offense. The prior version of the statute provided, in relevant part:

"All such fees collected shall be deposited by the county in a fund to be established and known as the Arrestee's Medical Costs Fund. Moneys in the Fund shall be used solely for reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff and administration of the Fund." 730 ILCS 125/17 (West 2006).

This court has analyzed this prior version of the statute and held that it applied to defendants who did not incur medical costs while under arrest. See *People v. Jones*, 397 Ill. App. 3d 651, 663 (2009). In *Jones*, 397 Ill. App. 3d at 662, this court reasoned that the prior version of the statute did not place any conditions on the county's right to the fee and that the last sentence of the statute quoted above indicated that the county could use the $10 fee for reimbursement of either costs for medical expenses incurred by the defendant while under arrest or costs for administration of the fund. Recently, in *Hubbard*, 404 Ill. App. 3d at 105-06, this court again considered the previous version of the statute and followed its decision in *Jones* to conclude that the fee was properly assessed upon the defendant, regardless of whether he was injured or treated while in custody. Other appellate districts have also considered the prior version of the statute and reached similar conclusions. See, *e.g.*, *Evangelista*, 393 Ill. App. 3d at 400; *Unander*, slip op. at 9-12.

In Public Act 95-842, effective August 15, 2008, the legislature amended section 17 of the Act. Pub. Act 95-842, §5, eff. August 15, 2008 (amending 730 ILCS 125/17 (West 2006)). The amended version replaced "reimbursement of costs for medical expenses relating to the arrestee

while he or she is in the custody of the sheriff" with "reimbursement to the county of costs for medical expenses." Pub. Act 95-842, §5, eff. August 15, 2008. The amendment also changed the title of the fund from the "Arrestee's Medical Costs Fund" to the "County Jail Medical Costs Fund." Pub. Act 95-842, §5, eff. August 15, 2008.

In this case, defendant's offense occurred on September 11, 2008, after the effective date of the amendment. Therefore, the current version of the statute, set forth above, applies in this case. Prior decisions have considered the statute when it contained the language "reimbursement of costs for medical expenses relating to the arrestee while he or she is in the custody of the sheriff" and when the fund was titled "Arrestee's Medical Costs Fund" and found that a defendant could be charged the fee even if he did not incur medical costs while under arrest. By replacing that language with the current version of statute, the amendment makes it clear that the fee is to be collected irrespective of whether a defendant incurs injury or requires treatment while in custody and supports the analysis of this court's prior decisions on this issue. Accordingly, we follow our holdings in *Jones* and *Hubbard* and find that defendant was properly assessed the $10 county jail medical fund fee.

Defendant further claims, and the State concedes, that he is entitled to presentence credit toward the $10 mental health court fee. See 55 ILCS 5/5-1101(d-5) (West 2008). The statute allows for a "$10 fee to be paid by the defendant on a judgment of guilty" which is used to finance "the county mental health court, the county drug court, or both." 55 ILCS 5/5-1101(d-5) (West 2008). In *Graves*, 235 Ill. 2d at 252, 255, our supreme court considered the purpose of the mental health fee and found that, although labeled a "fee," it was a "fine." In light of that

decision, we also conclude that the mental health fee is a "fine" toward which defendant is entitled to apply presentence credit.

Defendant finally claims, and the State agrees, that he is entitled to have his presentence credit applied toward the $30 Children's Advocacy Center (CAC) assessment imposed by the trial court because this assessment is a fine. Recently, in *People v. McNeal*, No. 1-08-2264, slip op. at 49 (September 30, 2010), and *People v. Jones*, 397 Ill. App. 3d 651, 660-61 (2009), this court reviewed the $30 CAC charge and held that it was a fine. We continue to adhere to these holdings and therefore agree with the parties that the $30 CAC charge is a fine to which defendant is entitled to apply presentence credit.

Accordingly, pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), the $5 court system fee is vacated. We order that the mittimus be corrected to reflect a credit of $40 toward the imposed fines which, along with the vacatur of the $5 court system fee, reduces defendant's monetary judgment from $580 to $535.

Affirmed in part and vacated in part; mittimus corrected.

JUSTICE ROBERT E. GORDON, dissenting:

On appeal, defendant asked this court to vacate one of his two convictions on the ground that the possession of a single loaded firearm cannot serve as the basis for multiple convictions.

I must dissent, because I agree that we must vacate one of defendant's two convictions. I reach this conclusion based on our legislature's amendment, enacted in response to our supreme court's decision in *People v. Carter*, 213 Ill. 2d 295 (2004).

This is a case of first impression; neither the court nor the parties found another case

1-09-1528

interpreting and applying the 2005 amendment. Pub. Act 94-284 (eff. July 1, 2005) (amending 720 ILCS 5/24-1.1(e) (West 2008)).[3]

The majority finds that the Illinois Supreme Court's decision in *Carter* presented an issue, which was then resolved by a statutory amendment. The majority finds that the amendment is not ambiguous and thus our job is done. However, the *Carter* case actually presented a number of different issues, which were not resolved by the subsequent amendment. Once one realizes the different issues involved, the ambiguities in the amendment become apparent.

In *Carter*, during a search of defendant's vehicle, the police recovered weapons and ammunition.[4] *Carter*, 213 Ill. 2d at 298. As a result of this one incident, defendant was charged

---

[3] The majority states that the *Lee* case "suggests" that the 2005 amendment permits multiple convictions for one loaded firearm. Slip op. at 4 n. 2 (citing *Lee*, 379 Ill. App. 3d at 538-39, 539 n. 2). The *Lee* case does not suggest that at all. In *Lee*, the law that governed was the old statute, prior to the amendment. *Lee*, 379 Ill. App. 3d at 538. In *Lee*, the defendant argued, the State conceded, and the trial court agreed that the old statute did not permit multiple convictions for one loaded firearm. *Lee*, 379 Ill. App. 3d at 538. The *Lee* court did observe that the statute had been subsequently amended, and the court reiterated the language of the amendment in a footnote, but the *Lee* court had no reason to consider the 2005 amendment, and it did not. *Lee*, 379 Ill. App. 3d at 538-39, 539 n.2.

[4] In *Carter*, there was a drive-by shooting; the shooter's vehicle crashed as it tried to avoid the police; the defendant, who was the driver, fled from the crashed vehicle; and police officers recovered weapons and ammunition from the crashed vehicle. *People v. Carter*, 344 Ill. App. 3d

24

with four separate counts of unlawful possession of a weapon by a felon. *Carter*, 213 Ill. 2d at 298. The four counts were for: (1) an unloaded 22-caliber handgun; (2) a 25-caliber handgun; (3) the ammunition clip that was attached to the 25-caliber handgun; and (4) a clip for the 22-caliber handgun, that was found near the 22-caliber handgun, but that was not attached to it. *Carter*, 344 Ill. App. 3d at 664-65.

The *Carter* case thus presented at least three potential issues: (1) whether the simultaneous possession of two firearms constituted one offense or two; (2) whether the possession of a loaded handgun constituted one offense or two; and (3) whether a loaded handgun presented a different issue than an unloaded handgun with a clip nearby.

The *Carter* court found that, under the version of the statute that applied to the facts before it, the simultaneous possession of the two weapons and their respective ammunition constituted one offense. *Carter*, 213 Ill. 2d at 304. Thus, the *Carter* court resolved all three potential issues with one holding. However, the *Carter* court asked our legislature to provide guidance on the issues raised by "the simultaneous possession of multiple firearms" and "the simultaneous possession *** of a firearm and ammunition." *Carter*, 213 Ill. 2d at 304. Our supreme court observed that almost every federal court of appeals that had considered these issues had found only one crime. *Carter*, 213 Ill. 2d at 304. Our supreme court specifically asked for legislative guidance with respect to a "loaded gun," stating: "[w]hile we agree with the State that a felon who possesses a loaded gun may be more dangerous than a felon who possesses a gun but no ammunition, it is for the legislature to 'define what it desires to make the [allowable] unit

663, 664-65 (2003), *aff'd in part and rev'd in part* by *Carter*, 213 Ill. 2d 295 (2004).

of prosecution.' " *Carter*, 213 Ill. 2d at 306 (quoting *Manning*, 71 Ill. 2d at 137, quoting *Bell*, 349 U.S. at 63).

The subsequent amendment states that: "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). Thus, "each firearm" leads only to a "single" offense. The amendment refers simply to "each firearm," without making any distinction between a loaded firearm and an unloaded firearm. Thus, to resolve any ambiguity in the defendant's favor as we are required to do, we must hold that "each" loaded firearm creates only a "single" offense. *Carter*, 213 Ill. 2d at 301 ("Criminal or penal statutes must be strictly construed in the defendant's favor").

In other weapons laws, the legislature has carefully drawn distinctions among: (1) a "loaded" firearm; (2) an "unloaded" firearm where "the ammunition for the weapon was immediately accessible; and (3) an unloaded firearm without immediately accessible ammunition. 720 ILCS 5/24-1.6 (West 2008). However, the legislature chose not to draw those distinctions here. Thus, resolving any ambiguity in favor of the defendant, we must find that "each firearm" means a firearm, whether loaded or not. 720 ILCS 5/24-1.1 (West 2008).

The ambiguity inherent in the statute becomes clear when we consider the phrase "each *** ammunition." 720 ILCS 5/24-1.1 (West 2008). "Ammunition" can be either plural or singular;[5] while "each" is singular.[6] The legislature's use of the phrase "each *** ammunition"

---

[5] Although the Criminal Code of 1961 defines "ammunition" as any one self-contained cartridge (720 ILCS 5/2-7.1 (West 2008), incorporating by reference 430 ILCS 65/1.1 (West 2008)), the word is commonly understood to be a plural noun. A dictionary defines

26

raises the question of whether "each" round of ammunition can lead to a separate offense or whether an entire collection of ammunition, without regard to the number of clips or rounds present, constitutes only one offense.  If we were to accept an interpretation that both the rounds in a firearm and the firearm itself can give rise to separate offenses, I am not sure  how many separate offenses could result from one loaded firearm, considering the number of rounds in the firearm itself or in any attached clip.  *Carter*, 344 Ill. App. 3d at 675 (McLaren, J., dissenting) (noting "the absurd result" that would be reached if every round of ammunition gave rise to a separate offense).

The majority suggests that, if we hold that a loaded firearm represents only one offense, our holding would have the absurd result of encouraging convicted felons to carry their guns loaded.  If a holding that a loaded firearm is a single offense would lead to an absurd result, then there is absurdity no matter which way we interpret this amendment.  As already discussed above, one firearm with a clip attached could lead to dozens of offenses.  If there is ambiguity in a criminal or penal statute, we are required to interpret it in the defendant's favor.  *Carter*, 213 Ill. 2d at 301 ("Criminal or penal statutes must be strictly construed in the defendant's favor").

---

"ammunition" as "[t]he projectiles, along with their fuses and primers, that can be fired from guns or otherwise propelled."  The American Heritage Dictionary, Second College Edition 103 (1982). The word "projectiles" is plural.

[6] "Each" is defined as "[b]eing one of two or more, considered individually, every." American Heritage Dictionary, Second College Edition 434 (1982).  "Each" thus means "being one."

1-09-1528

Since I decide this issue based solely on statutory construction, I do not reach any possible constitutional questions, such as whether the statute violates the one-act, one-crime rule. *People v. Quinones*, 362 Ill. App. 3d 385, 397 (2005) (multiple convictions "based on the same act, specifically, defendant's possession of the firearm *** cannot stand under the one-act, one-crime doctrine"). "One-act, one-crime principles apply only if the statute is construed as permitting multiple convictions ***." *Carter*, 213 Ill. 2d at 301. Our supreme court has "repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006); *People v. Melchor*, 226 Ill. 2d 24, 34 (2007).

Since the amendment is ambiguous, I find that only one offense is permitted for a single loaded firearm, and I would vacate one of defendant's two convictions. Defendant did not ask this court to remand for re-sentencing; otherwise I would also have ordered it.